■ In the Matter of the Claim of HELEN KESTENBAUM, Respondent, v. DUNRITE PAINTING COMPANY et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal from a decision and award of the Workmen's Compensation Board. Decedent was employed as a painter. In the course of employment he fell. He was found unconscious. Benzine had spilled, apparently when he fell. His clothes were saturated with this chemical and his body was wet and burned by it. Extensive areas of burns were found at the hospital. Symptoms were observed which led one physician to think decedent had an intra-cranial injury or a brain tumor. An exploratory operation of the brain was undertaken; extensive bleeding induced by this operation was the immediate cause of decedent's death. No evidence of brain tumor or trauma was discovered in the course of operation. A biopsy was taken, but the specimen was accidentally lost. On autopsy no brain tumor was demonstrated. The cause of death given on autopsy was: " Spontaneous Cerebral Hemorrhage followed by Exploratory Crimotomy. Hypostatic Lobular Pneumonia." A " cause of death " of one thing " followed by " another certainly means both; and in this instance means inescapably that the surgical procedure was itself a cause of death. It is clear from this, as well as from adequate other medical proof, that the operation itself was a direct cause of the death, i.e., the large amount of bleeding met with in the course of exploration of the intra-cranial spaces. But

the surgeon was looking for a tumor and for injury, which were not found. There is proof that the large exposure to benzine could cause symptoms which might simulate the conditions which led the physician to think an exploratory operation was needed for tumor or injury. Dr. Leinoff testified: " In addition there are other clinical findings which are highly suggestive benzine played a role in this man's clinical picture for which he was erroneously operated on for a brain tumor." There is some other, weaker, medical proof that the exposure to benzine in the quantities shown in this case itself weakened decedent and lowered his resistance to surgery. There is evidence enough in this record, therefore, to warrant a finding that the benzine poisoning produced a condition which led to a mistaken diagnosis and to the institution of surgical procedures which directly caused decedent's death. This would be an accident, whether decedent fell into the place of high benzine exposure due to idiopathic causes, or whether the benzine fumes helped to cause his fall. The record as a whole sustains the award. Award affirmed, with costs to the Workmen's Compensation Board. Bergan, P. J., Coon, Gibson and Reynolds, JJ., concur; Herlihy, J., dissents in the following memorandum and votes to reverse and dismiss the claim: There is no association or relationship established in this record between the accident and the death. The memorandum decision of the board dated February 26, 1958 and the subsequent finding dated September 9, 1958 are vastly different. The proof herein is not open to any presumptions. There was substantial evidence that the fall was caused by a cerebral hemorrhage. Applying the theory in *Matter of Connelly* v. *Samaritan Hosp.* (259 N. Y. 137) to the facts herein, it might be established that the can containing the benzine being solely attached to his employment justified a finding that the consequential injuries thereof arose out of his employment and that being so, in order to associate the death with any compensable accident, it was necessary to show that the benzine in some way contributed to its happening or in other words that the benzine was the cause or a cause of the operation and thus associated with the resulting death. The proof failed to establish any recognizable link in this necessary element of the case. The record shows that following his admittance to the hospital, one of its surgeons diagnosed his condition as caused from a brain tumor and which diagnosis led to the subsequent operation and his resultant death. From the record there is some uncertainty as to the correctness of this diagnosis or whether his condition was due to a brain hemorrhage but it is not disputed that his death was due to profuse bleeding as a result of the operation. The medical testimony which attempted to associate the benzine with his resulting death consisted of a statement by one doctor that he supposed the extreme burns would lead or contribute to his death. Another doctor who had examined the hospital and autopsy reports stated that " this man's exposure to benzine on 11–11–54 started a chain of events which led to his death " and he gave as his reasons " there are other clinical findings which are highly suggestive that benzine played a role in this man's clinical picture for which he was erroneously operated on for a brain tumor ". He finally concluded that the decedent had benzine intoxication or poisoning of the brain and that probably the continuous exposure to benzine over the years had a degenerating toxic effect on the decedent's brain. There was nothing in the record to substantiate such a statement or opinion. (*Matter of Palermo* v. *Gallucci & Sons*, 5 N Y 2d 529, 532.) In contrast to this speculative testimony, the physician who performed the autopsy, which included a microscopic examination, determined death was caused from the effects of a hemorrhage within the brain, which had been operated upon, plus a complicating pneumonia. He further stated: " to bring the burns in there is entirely superfluous, and if one were asked could the burns

have added anything to the picture that would be a matter of utmost speculation. * * * I think the process in the brain, and the complication in the lungs more than adequately explains the death." From a reading of the medical testimony in this record it is conclusive that there was no substantial evidence that associated benzine with the necessity for the operation or that benzine was related to the cause of death. The proof does not sustain the findings of the board that the decedent fell and struck his head and that the fall was accidental and not due to any tumor or other pathological or natural cause nor does it sustain that part of the memorandum decision that determined his death resulted in part from second degree burns. The record fails to support a finding of causal relationship. The decision and award should be reversed and claim dismissed.